IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

| | | |
|---|---|---|
| **In Re:** | ) | Chapter 7 |
| | ) | |
| **TODD S. HORLBECK** | ) | Case No.: 15-28696 |
| | ) | |
| Debtor. | ) | |

---

| | | |
|---|---|---|
| | ) | |
| **TILLMAN ENTERPRISES, LLC,** | ) | |
| | ) | |
| Plaintiff. | ) | |
| | ) | Adversary Proceeding |
| v. | ) | |
| | ) | No.: 16-00026 |
| **TODD S. HORLBECK,** | ) | |
| | ) | Hon. Donald R. Cassling |
| Defendant. | ) | |

### AMENDED COMPLAINT OBJECTING TO DISCHARGE OF DEBTS

NOW COMES Tillman Enterprises, LLC, by and through its counsel of record, Garelli, Grogan, Hesse & Hauert, pursuant to 11 U.S.C. § 523 and Rules 4004(d) and 7001(4) of the Federal Rules of Bankruptcy Procedure, and for its Amended Complaint Objecting to Discharge of Debts, states as follows:

### PARTIES

1. Plaintiff, TILLMAN ENTERPRISES, LLC ("Tillman Enterprises"), is Delaware limited liability company registered to do business in Illinois. Tillman Enterprises is a named-creditor in the above-captioned bankruptcy case. Warner Tillman is the manager of Tillman Enterprises.

2. Defendant, TODD S. HORLBECK ("Horlbeck"), is an individual who resides in St. Charles, Illinois. Horlbeck is the debtor in the above-captioned bankruptcy case.

1

3. Third parties relevant to the allegations herein include: the Warner Tillman Trust, for which Warner Tillman is the trustee; and various family members of Warner Tillman: Joel Tillman and Julie Tillman; Joshua Tillman; Jenny Wiley and Sam Wiley; and the Burton Tillman Estate, for which Warner Tillman is the executor. Each of these parties, as well as Tillman Enterprises, invested in Horlbeck's hedge fund. At times herein, these third parties will be collectively referred to as the "Tillman family."

## JURISDICTION AND VENUE

4. This Court has jurisdiction of this complaint pursuant to 28 U.S.C. §§ 1334 and 157(b)(1).

5. The Northern District of Illinois is the proper venue for this complaint pursuant to 28 U.S.C. 1409(a).

6. This complaint is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(J).

## FACTUAL BACKGROUND

### Horlbeck's Hedge Fund

7. In 2002, Horlbeck established HCM L.P., an Illinois limited partnership, to operate a hedge fund. HCM, LLC, an investment firm owned and managed by Horlbeck, was the general partner of HCM L.P.

8. Horlbeck was the sole manager of the hedge fund.

9. Horlbeck began soliciting accredited investors in 2002 for capital contributions to HCM L.P. In exchange for their contributions, investors would receive limited partnership interests in HCM L.P.

10. Each quarter, HCM L.P. issued statements to each of its limited partners which valued their account balance based on net asset value ("NAV"). Horlbeck calculated these NAV figures and issued the statements on behalf of HCM L.P.

11. The HCM L.P. investors were restricted to one withdrawal per year.

### The Tillman Family Investments in HCM L.P.

12. In 2003, Joshua Tillman invested $250,000 in exchange for a limited partnership interest in HCM L.P.

13. In 2004, at the direction of Warner Tillman, Tillman Enterprises invested $1,000,000 for a limited partnership interest in HCM L.P. Warner Tillman also made a $200,000 investment in HCM L.P. from his personal trust that same year. In addition, Warner Tillman, as executor for the Burton Tillman Estate, invested $200,000 for a limited partnership interest in HCM L.P. in 2004.

14. In 2006, Warner Tillman invested another $500,000 from his personal trust for a limited partnership interest in HCM L.P.

15. In the first quarter of 2007, Joel and Julie Tillman each invested $60,000 for a limited partnership interest in HCM L.P.

### Horlbeck's Materially False Account Statements

16. Beginning in the first quarter of 2007 ("Q1 2007"), unbeknownst to Tillman Enterprises or the Tillman family, Horlbeck grossly overvalued the NAV of the Tillman Enterprises' account and each account owned by the Tillman family members. For instance, in its Q1 2007 statement, Horlbeck listed Tillman Enterprises with an account balance of $1,266,884.84 when its actual balance was $1,153,533.72, representing an $113,351.12 or 8.95% overvaluation.

17. The percentage of overvaluation was not consistent amongst the Tillman Family accounts.

18. Also in Q1 2007, Horlbeck listed Warner Tillman personal trust's account with an account balance of $799,135.99 when his actual balance was $724,574.80, representing a $74,561.19 or 9.53% overvaluation.

19. Horlbeck continued to misstate Tillman Enterprises' and the Tillman family member's account balances in each subsequent quarter with the difference between Horlbeck's stated valuation and the actual valuation increasing with every statement.

20. In the fourth quarter of 2008 ("Q4 2008"), Horlbeck listed an account balance for Tillman Enterprises of $1,090,591.89 when the actual balance was $350,577.30, representing a $740,014.59 or 67.85% overvaluation.

21. Likewise in its Q4 2008 statement, Horlbeck listed an account balance for Warner Tillman's personal trust of $687,932.48 when the actual balance was $220,305.01, representing a $467,627.47 or 67.98% overvaluation.

### The Tillman's' Continued Investment with Horlbeck

22. In reliance upon the overstated account balances, the Tillman family continued to invest with HCM L.P.

23. In the second quarter of 2007, Joel and Julie Tillman each invested another $100,000 in HCM L.P.

24. In the third quarter of 2007, Sam and Jenny Wiley each invested $50,000 for a limited partnership interest in HCM L.P.

25. In the first quarter of 2008, Warner Tillman, as executor for the Burton Tillman Estate, invested another $600,000 in HCM L.P.

**Horlbeck's Unauthorized Distributions from the Partnership**

26. At the same time that Horlbeck was misstating Tillman Enterprises' and the Tillman family's account values, he was taking unauthorized distributions from the partnership.

27. HCM L.P.'s partnership agreement allowed its general partner, HCM LLC (owned and operated by Horlbeck), to take distributions equal to the taxable amount of its shares. Pursuant to HCM L.P.'s partnership agreement, any distribution taken by Horlbeck in excess of the taxable amount had to be disclosed in writing to HCM L.P.'s limited partners.

28. Unbeknownst to Tillman Enterprises and the Tillman family, Horlbeck took distributions from the fund for $380,000 and $160,000 in 2007 and 2008, respectively.

29. As reported by the accounting firm, Ostrow Reisin Berk & Abrams, Ltd., those distributions vastly exceeded the taxable amount of HCM LLC's partnership shares.

**Horlbeck's Misstatements Regarding his Management of the Partnership**

30. In January 2009, Horlbeck sent a letter to the limited partners of HCM L.P. in which he advised that he would be closing HCM L.P on April 15, 2009. In this correspondence, Horlbeck admits no mistakes or wrongdoing with respect to how he calculated account values, but rather that the bear market simply required a "change in format" in his investing strategy.

31. On or around April 29, 2009, Horlbeck liquidated HCM L.P. He did not issue quarterly statements for the first quarter of 2009. Instead, he paid out Tillman Enterprises' and the Tillman family's investments at an alarmingly reduced NAV compared to the last issued statement from Q4 2008.

32. Despite claiming that Tillman Enterprises had an account balance of $1,090,591.89 as of Q4 2008, Horlbeck returned only $339,812.63 for its 1,000,000 limited partnership shares in HCM L.P., thus imposing on Tillman Enterprises a staggering 68.84% loss

5

over a four-month period. Likewise, despite claiming that Warner Tillman's personal trust had an account balance of $687,932.48 as of Q4 2008, Horlbeck returned only $214,349.79 for its 630,788.18 limited partnership shares in HCM L.P., thus imposing on Warner Tillman's personal trust with the same 68.84% loss over the previous four months.

33. On May 18, 2009, Horlbeck finally admitted in a letter to Warner Tillman of "performance and reporting inaccuracies" of HCM L.P. However, Horlbeck represented that these inaccuracies did not affect Warner Tillman's final distributions and that the losses of Warner Tillman's investment of the partnership "entirely were attributable to overall market losses." In the conclusion of the letter, Horlbeck promised to send Warner Tillman corrected statements.

34. On August 28, 2009, Horlbeck again wrote Warner Tillman to further explain his reporting inaccuracies and the delay in providing corrected statements. In this correspondence, Horlbeck alleged that some of HCM L.P.'s investors "were inadvertently overpaid." Due to the overpayment, Horlbeck explained, Tillman Enterprises was owed an additional $20,397.50. Horlbeck offered to personally sign a promissory note to pay off this debt to Tillman Enterprises over time in exchange for Tillman Enterprises signing a full release of Horlbeck for any and all claims relating to Tillman Enterprises' investment in HCM L.P.

35. Notably, Horlbeck asked Tillman to release him of all actions related to his management of HCM L.P. and to agree that nothing Horlbeck did constituted "a sales practice violation of any rules for which a person could be disciplined by any self-regulatory organization . . . ."

36. Warner Tillman sought legal counsel.

**Horlbeck's Misstatements Regarding his Ability to Continue Working**

37. Upon receiving Horlbeck's August 28, 2009 correspondence, Warner Tillman sought legal counsel to investigate Horlbeck's claims and refused to sign any release.

38. From September 2009 through 2010, Warner Tillman and his legal counsel sought financial documents from Horlbeck to determine the extent to which Horlbeck could pay back the losses sustained by Tillman Enterprises and the Tillman family members.

39. Throughout these negotiations, Horlbeck continuously represented to Tillman Enterprises that he committed no wrongdoing with respect to his management of HCM L.P and that he could continue working in a similar investment manager capacity to pay off agreed debts.

40. Tillman also dissuaded Tillman from pursuing any action against Cantella, his broker-dealer stating that such an action would "put my income at risk."

41. Eventually, the parties agreed to terms based on the persistent, continuous representation from Horlbeck that he committed no wrongdoing and could continue to work in an investment manager role.

42. Unbeknownst to Warner Tillman and the Tillman family members, FINRA, the Financial Industry Regulatory Authority, had already begun an investigation of Horlbeck (No. 2009 019346601) which would lead to Horlbeck consenting to sanctions.

43. Relying on Horlbeck's statements that he committed no wrongdoing and would be able to continue working in a similar investment manager role, Tillman Enterprises and the Tillman family entered into a settlement agreement with Horlbeck. The final settlement documents were exchanged in January 2011.

44. The settlement documents included a promissory note in the amount of $1,242,500.00. *See* Promissory Note between Horlbeck and Tillman Enterprises, attached as **Exhibit A**.

45. Horlbeck never disclosed to Tillman Enterprises or the Tillman family the FINRA investigation until October 2011 when he disclosed a draft of the Letter of Acceptance, Waiver and Consent ("AWC"), which he later signed on November 2, 2011. *See* a copy of the AWC attached as **Exhibit B**.

46. In the AWC, Horlbeck agreed to the Letter of Acceptance, Waiver and Consent "on the condition that, if accepted, FINRA [would] not bring any future actions against [Horlbeck] alleging violations based on the same factual findings described herein."

47. Specifically, the AWC stated that Horlbeck "misstated the value of the hedge fund to investors and he created and provided inaccurate account statements to the hedge fund investors, in violation of NASD Rule 2110 and FINRA Rule 2010."[1]

48. Significantly, Horlbeck agreed to "[a] bar from association with any FINRA member in any capacity" in the AWC.

### The Settlement Documents

49. The settlement agreement between Horlbeck (together with HCM LLC and HCM L.P., defined as the "Horlbeck Related Parties") and Tillman Enterprises specifically stated that it was resolving claims of securities violations, fraud and misrepresentation with respect to Horlbeck's management of HCM L.P. and the partnership interests of Tillman Enterprises, Warner Tillman and the Tillman Family members. *See* a copy of the Settlement Agreement attached as **Exhibit C.**

50. A condition to executing the Settlement Agreement was that Horlbeck had to truthfully and accurately disclose his financial position (tax returns, liens on property, insurance

---

[1] Both NASD Rule 2110 and FINRA Rule 2010 provide that "[a] member, in the conduct of his business, shall observe high standards of commercial honor and just and equitable principles of trade." NASD Rule 2110 has been superseded by FINRA Rule 2010.

8

policies and appraisals for property) and provide an affidavit relating to same (the "Financial Disclosures").

51. The settlement arrangement between Horlbeck and Tillman Enterprises was comprised of multiple documents reduced to writing at different times.

52. At one point, Horlbeck signed "drafts" of settlement documents which were rejected by Tillman's counsel.

53. Tillman's counsel told Horlbeck that there was no settlement until Tillman Enterprises had received and reviewed all the financial disclosures requested of Horlbeck.

54. Horlbeck eventually produced all the requested Financial Disclosures to Tillman's counsel over several months, in fall/winter of 2010.

55. Included in the Financial Disclosures was Horlbeck's financial affidavit. *See* Horlbeck's financial affidavit, *without exhibits*, attached as **Exhibit D**.

56. Horlbeck represented and warranted that his financial affidavit was "true, accurate and complete and do (sic) not fail to disclose any assets or liabilities of Todd Horlbeck . . . ." *See* **Exhibit C** at ¶ 13.

57. In his financial affidavit, Horlbeck disclosed that he "quit claimed any and all interest he had in the [Illinois] Property to Laura Horlbeck." *See* **Exhibit D** at ¶ 7.

58. Horlbeck makes no mention of the Wisconsin Property in his financial affidavit despite that fact that he quit claimed his interest in that a mere four days after he transferred his interest in the Illinois Property.

59. Horlbeck's financial affidavit concludes with an attestation that he disclosed all assets and liabilities held or owned by Horlbeck and his wife, Laura Horlbeck, as of the date he signed the financial affidavit. *See* Exhibit D at ¶ 10.

60. Attached as an exhibit to Horlbeck's financial affidavit was a personal financial statement that purportedly listed all of Horlbeck and his wife's assets and liabilities. *See* Horlbeck's personal financial statement attached as **Exhibit E**.

61. However, Horlbeck failed to list any notes payable (other than his two mortgages) despite the fact that he had agreed to pay over $1,300,000.00 in promissory notes to other HCM L.P. investors at the time he signed the financial affidavit. *See* **Exhibit E**.

62. After all the financial disclosures had been made, the parties exchanged final settlement documents in January 2011.

63. Pursuant to the Settlement Agreement, in exchange for releasing Horlbeck of securities violations and other fraud claims, Tillman Enterprises received a lump sum cash payment of $22,500 and a promissory note in the amount of $1,242,500.00 to be paid over a twenty year term (the "Promissory Note"). *See* **Exhibit A**.

### Transfers to Horlbeck's Wife, Laura Horlbeck

64. On November 16, 2009, Horlbeck transferred his interest of real property located at 4N653 Hidden Oaks Dr., St. Charles, Illinois (the "Illinois Property"), to his wife, Laura Horlbeck, for $1.00. Horlbeck and his wife originally purchased the Illinois Property in 2003 for $990,000.00.

65. Days later, on November 20, 2009, Horlbeck transferred his interest of real property located at 12391 W. Moreland Rd., Hayward, Wisconsin (the "Wisconsin Property"), to his wife, Laura Horlbeck, for $1.00. The assessed value of the Wisconsin Property was $636,400.00.

66. However, on his personal financial statement submitted to Tillman Enterprises in 2010, Horlbeck lists the Wisconsin Property as owned jointly with his wife. *See* **Exhibit E**.

67. During the creditor's meeting held in this matter, Horlbeck disclosed that his wife, Laura Horlbeck, a stay-at-home mom that graduated from college with an engineering degree, owns several businesses, some in the financial services business.

68. Specifically, Laura Horlbeck is listed in Illinois Secretary of State records as being the President or Manager of four companies: Fiat Financial Money Center LLC, formed on October 3, 2006; Lifestyle Rent to Own Inc., formed on September 23, 2010; JAB Consulting Group Corp., formed on January 14, 2011; and Duke and Duke Management LLC, formed on April 7, 2012.

69. Horlbeck denies any knowledge of these businesses, any involvement or ownership interest.

### Horlbeck's Failure to Perform under the Promissory Note

70. On October 28, 2013, Tillman Enterprises filed suit against Horlbeck in state court for breach of the Promissory Note and later added a claim against Laura Horlbeck for fraudulent transfer of the Illinois Property and Wisconsin Property. The suit is Case No. 13 1 547 in the Circuit Court of Kane County before the Honorable James R. Murphy (the "State Court Matter").

71. Horlbeck filed the above-captioned bankruptcy case on August 21, 2015. As a result, the State Court Matter against Horlbeck was dismissed without prejudice.

72. On his Schedule F filed in the above-captioned bankruptcy case, Horlbeck names Tillman Enterprises as a creditor for a promissory note in the amount of $1.1 million.

73. In addition, Horlbeck lists several other promissory note debts with other creditors that he incurred in 2008 and 2009 that total nearly $1.3 million.

### COUNT I
### CLAIM FOR RELIEF UNDER 11 U.S.C. § 523(a)(19)

74.     Tillman Enterprises adopts, realleges and incorporates by reference the allegations contained in Paragraphs 1 through 72 above as though fully set forth herein.

75.     11 U.S.C. § 523(a)(19) states in pertinent part as follows:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
***
(19) that—
    (A) is for—
        (i)
the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or
        (ii)
common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and
    (B) results, before, on, or after the date on which the petition was filed, from—
        (i)
any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
        (ii)
any settlement agreement entered into by the debtor; or
        (iii)
any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

76.     The Promissory Note was an integral part of a global settlement involving claims of securities violations, fraud and misrepresentation with respect to Horlbeck's management of the Tillman family member's HCM L.P interests.

77.     Horlbeck made misstatements of fact at the end of each quarter in 2007 and 2008 to Tillman Enterprises and each member of the Tillman family in the form of gross overvaluations of their account balances.

78.     These actions violated NASD Rule 2110 and FINA Rule 2010. *See* **Exhibit B.**

79. During the same time that he was misstating Tillman Enterprises' and the Tillman family's account balances, Horlbeck was taking excessive distributions from HCM L.P.

80. The distributions to HCM LLC in 2007 and 2008 were improper and violated the HCM L.P. partnership agreement.

81. Upon information and belief, these distributions were not disclosed to FINRA.

82. Horlbeck's misstatements enabled Horlbeck to defraud the HCM L.P. investors by covering up his improper distributions.

83. Horlbeck misreported Tillman Enterprises' and the Tillman family's account balances for a two-year period in 2007 and 2008 with the difference between his stated and the actual valuations increasing dramatically over that time span.

84. Horlbeck's misstatements in the quarterly statements overvalued the account values by 9% increasing to 68%. Thus, Horlbeck's misstatements were quantitatively material.

85. In reliance on these misstatements, the Tillman family continued to purchase limited partnership interests in HCM L.P. for an additional $850,000 in contributions.

86. If the Tillman Family had known of the misstatements of overvaluation or of the excessive distributions to HCM LLC, it would not have continued to purchase limited partnership interests in HCM L.P.

87. Furthermore, once the misstatements were disclosed, Horlbeck repeatedly misled Tillman Enterprises about his reporting errors and changed his story numerous times regarding the cause of the reporting errors and the amounts owed to Tillman Enterprises.

88. In January 2009, Horlbeck tried to persuade Tillman Enterprises that its gargantuan losses were merely due to market losses.

89. Later, in May 2009, he admitted to reporting errors but promised that they did not affect Tillman Enterprises' final distribution.

90. In August 2009, he admitted that he owed Tillman Enterprises additional money (only $20,397.50) but demanded Tillman Enterprises release him of all liability in exchange for payment of this debt.

91. Horlbeck misrepresented the extent of his mismanagement of the fund.

92. It was only due to Warner Tillman's independent investigation that he discovered Horlbeck's misstated account balances from years earlier.

93. The immense disparity between Horlbeck's misstatements and the actual values of the Tillman family accounts, Horlbeck's improper distributions to himself, his failure to notify the partner of the distributions, his inconsistent and misleading statements of the "reporting errors," Horlbeck's misrepresentation as to amounts owed to Tillman Enterprises, and his misrepresentations in the Financial Disclosures demonstrate that Horlbeck acted knowingly with the intent to deceive Tillman Enterprises into entering into the settlement agreement and Promissory Note.

94. Tillman Enterprises has suffered damage in the form of the outstanding balance, interest, and other costs associated with the Promissory Note which Horlbeck has listed in his Schedule F.

95. Therefore, Horlbeck's debt resulting from the Settlement Agreement and Promissory Note are covered by 11 U.S.C. § 523(a)(19) should not be discharged.

WHEREFORE, Tillman Enterprises, LLC prays that this Court deny the discharge of Todd S. Horlbeck's debt to Tillman Enterprises, LLC and for such and further relief that this Court deems just.

## COUNT II
## CLAIM FOR RELIEF UNDER 11 U.S.C. § 523(a)(2)(A)

96. Tillman Enterprises adopts, realleges and incorporates by reference the allegations contained in Paragraphs 1 through 95 above as though fully set forth herein.

97. 11 U.S.C. § 523(a)(2)(A) states in pertinent part as follows:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\*\*\*

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
    (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

\* \* \*

98. Horlbeck incurred his debt with Tillman Enterprises by entering into an agreement to provide the Promissory Note. Horlbeck was fraudulently induced to enter into agreement, the Settlement Agreement, based on false representations of the nature of his errors managing HCM L.P. and his ability to continue to work in an investment manager role.

99. After receiving Horlbeck's August 28, 2009 correspondence in which Horlbeck asked Tillman Enterprises to enter into a promissory note for slightly over $20,000 in exchange for a full release of claims, Warner Tillman obtained counsel and discovered Horlbeck's false quarterly statements for HCM L.P. dating back to Q1 2007 and including every statement from that point through Q4 2008.

100. During the negotiations with Tillman Enterprises, Horlbeck failed to disclose FINRA's investigation into his violations of FINRA rules and regulations. Instead, Horlbeck maintained to Tillman Enterprises that he committed no wrongdoing while managing HCM L.P.

101. By hiding the FINRA investigation, Horlbeck maintained to Tillman Enterprises that he would continue to work in an investment manager role in order to pay the Promissory Note.

102. Unbeknownst to Tillman Enterprise, Horlbeck was already under investigation with FINRA and negotiating with FINRA. Those negotiations led to the AWC which included Horlbeck's consent to the imposition of sanctions which included a ban on working with any FINRA member in any capacity. Therefore, Horlbeck was aware that his representations to Tillman Enterprises and the Tillman family were false.

103. Horlbeck made these false representations with intent to deceive Tillman Enterprises.

104. Tillman Enterprises would not have agreed to a promissory note had it known that Horlbeck's job status was at stake since that directly affected his ability to pay.

105. Tillman Enterprises justifiably relied on Horlbeck's false representations because Horlbeck consistently maintained that he committed no wrongdoings and never disclosed any other promissory notes other investors of HCM L.P. Tillman Enterprises did not learn of the AWC until <u>after</u> the parties executed the settlement documents.

106. As a result of Horlbeck's false representations, Tillman Enterprises entered into the Promissory Note under which Horlbeck allegedly cannot pay due to his consent to sanctions with FINRA.

107. Horlbeck consented to the AWC in order to avoid future actions by FINRA. *See* page 1 of **Exhibit B.**

108. As a result, Tillman Enterprises has suffered damages equal to the unpaid balance of the Promissory Note which Horlbeck has listed in his Schedule F.

16

WHEREFORE, Tillman Enterprises, LLC prays that this Court deny the discharge of Todd S. Horlbeck's debt to Tillman Enterprises, LLC and for such and further relief that this Court deems just.

### COUNT III
### CLAIM FOR RELIEF UNDER 11 U.S.C. § 523(a)(2)(B)

109. Tillman Enterprises adopts, realleges and incorporates by reference the allegations contained in Paragraphs 1 through 108 above as though fully set forth herein.

110. 11 U.S.C. § 523(a)(2)(B) states in pertinent part as follows:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\*\*\*

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

\*\*\*

(B) use of a statement in writing—

(i) that is materially false;
(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive.

111. Horlbeck agreed to pay Tillman Enterprises $1,242,500.00 pursuant to the Promissory Note.

112. Horlbeck used his financial affidavit and his financial statement to induce Tillman Enterprises to agree to the Promissory Note.

113. Horlbeck's personal financial statement omitted all of the promissory notes that he had entered into in 2008 and 2009 totaling $1.3 million.

17

114. Horlbeck also omitted from his financial affidavit the fact that he had quitclaimed the Wisconsin Property to his wife almost a year earlier.

115. Together, these omissions made Horlbeck's financial affidavit and personal financial statement materially false because they did not include liabilities of $1.3 million and included an asset worth $636,400 of which Horlbeck did not own.

116. Both materially false written statements directly affected Horlbeck's financial condition and materially affected Horlbeck's ability to repay the Promissory Note.

117. Despite Horlbeck pre-signing the settlement documents which were subsequently rejected by Tillman Enterprises, Tillman Enterprises would not finalize the settlement until it had reviewed and considered all of the requested Financial Disclosures from Horlbeck.

118. Had Tillman Enterprises known of Horlbeck's substantial additional debt, it would have not agreed to enter into the Promissory Note.

119. Tillman Enterprises reasonably relied on Horlbeck's materially false written statements because Horlbeck signed his financial affidavit under oath.

120. Horlbeck made these materially false written statements with the intent to deceive Tillman Enterprises.

121. By hiding his personal debt to other investors of HCM L.P. and FINRA's investigation into his potential securities violations, Horlbeck caused Warner Tillman to believe that Horlbeck could continue to work in the financial services industry and pay the Promissory Note.

122. Horlbeck's repeated inconsistencies and omissions during his time managing HCM L.P. up through the negotiations with Tillman Enterprises together with his taking of

improper distributions at a time when his investors were losing money show that he is simply not the honest debtor for which the bankruptcy courts were meant to provide relief.

WHEREFORE, Tillman Enterprises, LLC prays that this Court deny the discharge of Todd S. Horlbeck's debt to Tillman Enterprises, LLC and for such and further relief that this Court deems just.

                              Respectfully submitted,
                              TILLMAN ENTERPRISES, LLC

                              By: _____
                                   One of Its Attorneys

Channing Blair Hesse
Timothy Oliver
Garelli, Grogan, Hesse & Hauert
340 W. Butterfield Rd., Suite 2A
Elmhurst, IL 60126
(630) 833-5533

19

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 7 |
| | ) | |
| TILLMAN ENTERPRISES, LLC, | ) | |
| | ) | |
| Plaintiff. | ) | |
| | ) | Adversary Proceeding |
| v. | ) | |
| | ) | No.: 16-00026 |
| TODD S. HORLBECK, | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF FILING

TO: Jordan B Dorrestein
   Higgins Burke
   2560 Foxfield Rd Suite 200
   St. Charles, IL 60174
   jdorrestein@higginsandburke.com

PLEASE TAKE NOTICE that on the 11th day of April, 2016, the undersigned filed with the Northern District of Illinois Bankruptcy Court, this ***Notice of Filing, and Tillman Enterprise, LLC's Amended Complaint Objecting to Discharge Debts,*** a copy of which is attached hereto and herewith served upon you.

                                            Tillman Enterprises, LLC
                                             By: /s/ Channing Blair Hesse

Channing Blair Hesse (6224487)
Garelli, Grogan, Hesse & Hauert
340 W. Butterfield Rd., Suite 2A
Elmhurst, IL 60126
chesse@gghhlaw.com

## PROOF OF SERVICE

I, the undersigned, a non-attorney, hereby stated that pursuant to by Section II, B, 4 of the Administrative Procedures for the Case management/Electronic Case filing System, I caused copy of this Notice of Motion and related pleadings to be served on the above named attorney set forth identified as Registrants through the Court's Electronic Notice for Registrants and by via Electronic Mail and mailing a copy of the same by depositing said documents in the U.S. Mail at 340 W. Butterfield Rd., Elmhurst, Illinois, postage fully prepaid, on the 18th day of November, 2015.

                                            /s/: Jevo Osinski